**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

PAWEL WROBEL,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:16-cv-36

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Pawel Wrobel ("Wrobel"), who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 7.) For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Wrobel's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Wrobel *in forma pauperis* status on appeal.

## **BACKGROUND**

Wrobel is serving a 60-month sentence based on his conviction in the Northern District of Illinois for conspiracy to attempt robbery and attempted robbery, in violation of 18 U.S.C. § 1951(a). (Doc. 7-1, p. 16.) He has a projected release date of December 29, 2016, via good conduct time release. (Id. at p. 13.) Wrobel states he has a public safety factor ("PSF") of "deportable alien." (Doc. 1, p. 3.) The contentions Wrobel sets forth in his Petition are largely based on the existence of this PSF.

**DISCUSSION**

In his Petition, Wrobel contends the Bureau of Prisons ("BOP") designated him to serve his sentence at D. Ray James Correctional Facility ("D. Ray James") based on his PSF of deportable alien. Wrobel states that he was eligible for home detention on July 1, 2016, but his assigned PSF precludes him from this benefit, despite the absence of an immigration detainer against him. (Doc. 1, p. 3.) Wrobel asserts he has asked the BOP to remove his PSF so that he can receive the benefit of home detention, but the BOP has ignored that request. Wrobel requests that this Court direct the BOP to remove his PSF of deportable alien.

Respondent maintains Wrobel's contentions regarding the placement of his PSF concern the conditions of his confinement rather than the execution or duration of his sentence, and thus, are not cognizable under Section 2241. (Doc. 7, pp. 2–3.) Respondent also asserts Wrobel failed to exhaust his administrative remedies prior to bringing his Petition. (Id. at p. 3.) Finally, Respondent alleges Wrobel's Petition is without merit because the BOP did not abuse its discretion by assigning Wrobel a PSF of deportable alien.

Respondent raises several reasons why Wrobel's Petition should be dismissed, which the Court addresses in turn.

**I.  Whether Wrobel can Proceed Pursuant to Section 2241**

Respondent contends Wrobel's claim concerning the application of the PSF[1] cannot form the basis of his Section 2241 Petition because Wrobel's claim contests the conditions of his

---

[1] The BOP defines a PSF as "relevant factual information regarding the inmate's current offense, sentence, criminal history, or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." BOP Program Statement 5100.08, Ch. 5, p. 7 (2006); (Doc. 7-1, p. 51.). The BOP defines "Deportable Alien" as: "A male or female inmate who is not a citizen of the United States. All long-term detainees will have this PSF applied. When applied, the inmate or the long-term detainee shall be housed in at least a Low security level institution. The PSF shall not be applied, or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive Office for Immigration Review (EOIR) have determined that deportation proceedings are

confinement, not the fact or duration of that confinement. (Doc. 7, p. 5.) Respondent states this Court, as well as other courts around the country, have dismissed Section 2241 petitions in which a petitioner challenges his PSF. (Id.) In support of this premise, Respondent cites to this Court's decision in Caba v. United States, No. CV310-082, 2010 WL 5437269 (S.D. Ga. Nov. 30, 2010), *report and recommendation adopted*, 2010 WL 5441919 (S.D. Ga. Dec. 27, 2010).

In Caba, this Court determined a petitioner's allegations concerning his security classification—specifically the BOP's "imposition of a PSF of 'Alien'"—was a challenge to the conditions of the petitioner's confinement and were not cognizable in a Section 2241 petition. 2010 WL 5437269, at *2. However, this Court has since determined a petitioner can challenge his security classification or place of confinement via Section 2241.[2] Baranwal v. Stone, No. CV 314-098, 2015 WL 171410, at *2 (S.D. Ga. Jan. 13, 2015); Herrera v. Johns, Civil Action No. CV513-031, 2013 WL 5574455, at *1 n.1 (S.D. Ga. Oct. 8, 2013). Other courts have reached this same conclusion. See United States v. Saldana, 273 F. App'x 845 (11th Cir. 2008); Becerra v. Miner, 248 F. App'x 368 (3d Cir. 2007); Wrobel-Molina v. United States, Civ. No. 09-1080-CV-W-NKL-P, 2010 WL 1486055, at *2 (W.D. Mo. Apr. 14, 2010).

Courts in the Fifth Circuit note the distinction between a Section 2241 and a civil rights action "becomes 'blurry' when an inmate challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody." Pham v. Wagner, No. 5:14-CV-67(DCB)(MTP), 2016 WL 5852553, at *2 (S.D. Miss. Oct. 6, 2016)

---

unwarranted or there is a finding not to deport at the completion of deportation proceedings. . . . Additionally, the PSF shall not be applied if the inmate has been naturalized as a United States citizen." (Id. at p. 53.) Wrobel has a PSF of "deportable alien" because he is classified as a legal resident alien subject to deportation based on his conviction. (Doc. 1, p. 7.)

[2] Respondent's citation to case law finding Section 2241 is not the proper vehicle by which to challenge a PSF is not erroneous. This Court's contrary citations merely are illustrations that, as a whole, there is not a consensus on this issue.

(citing Carson v. Johnson, 112 F.3d 818, 820–21 (5th Cir. 1997)). As a result, the Fifth Circuit Court of Appeals has "'adopted a simple, bright-line rule for resolving such questions.' If a favorable determination of an inmate's claims would not automatically entitle the inmate to accelerated release, the proper vehicle is a civil rights suit." Id. (quoting Carson, 112 F.3d at 820–21). If a petitioner is not seeking immediate or early release from custody and is instead seeking to have his PSF of "Deportable Alien" removed so that he will be eligible for programs that could reduce his sentence, he has not alleged that a favorable determination would automatically entitle him to a speedier release from custody. Thus, the proper vehicle for raising his claims would be a civil rights suit. Id.; see also Boyce v. Ashcroft, 251 F.3d 911, 914 (10th Cir. 2001) ("Prisoners who raise constitutional challenges to other prison decisions—including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g., conditions of confinement, must proceed" with a civil rights lawsuit.).

I find the Fifth Circuit's test to be proper for resolving this question. Based on that test, Wrobel cannot pursue his claims in this Section 2241 Petition because he is not seeking immediate or early release from custody. While a favorable determination may entitle him to participate in programs that could reduce his sentence, a favorable determination does not automatically entitle him to a speedier release from custody. Therefore, the Court should **DISMISS** Wrobel's Petition for lack of jurisdiction. Even if this Court has jurisdiction over Wrobel's Petition, his claims would still be subject to dismissal for the reasons discussed in the next Section of this Report.

**II.     Whether Wrobel Exhausted his Administrative Remedies**

   **A.     Legal Requirements for Exhaustion**

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the Supreme Court recently "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the

5

administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[3]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

---

[3] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

6

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[4] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in

---

[4] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards to a Section 2241 petition).

conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**C. Analysis of Wrobel's Efforts at Exhaustion**

In his Petition, Wrobel indicates that he attempted to pursue his administrative remedies. However, he contends that he sent his request to the Designation and Sentence Computation Center via a letter because staff at D. Ray James would not provide any forms to address sentencing issues. (Doc. 1, p. 4.) Accepting these allegations as true, Wrobel attempted to exhaust all administrative remedies that were available to him. Thus, in an abundance of caution, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 7-1, p. 7.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (Id.) An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form. (Id. at pp. 7–8.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP-related matters.[5] (Id. at p. 8.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id.) If an inmate files an administrative remedy concerning a BOP-related matter, the

---

[5] Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. Pichardo v. Zenk, CV511-69, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (Oct. 26, 2011).

administrative remedies will be recorded in the BOP's SENTRY computer database. (Id. at pp. 8–9.)

The credible evidence before the Court reveals Wrobel has not filed any administrative remedy requests for BOP-related matters since he has been incarcerated based on his federal sentence. (Doc. 7-1, pp. 9, 72.) In addition, Vincent Shaw, Senior Litigation Counsel with the Bureau of Prisons' Southeast Regional Office, declares that staff at D. Ray James were "unaware of any filings concerning the issues presented in this petition." (Id. at p. 9.) The Court finds this evidence more credible than Wrobel's unsupported and conclusory allegations regarding exhaustion. Thus, Wrobel failed to file an administrative remedy as to his claims that his PSF classification as a deportable alien prevented his release to home confinement. As set forth in footnote 5 of this Report, Wrobel's claims concern BOP-related matters which must be appealed through the above-described process, which Wrobel failed to do. Additionally, based on Respondent's submissions, it appears that the BOP's administrative remedies are available to Wrobel, despite any contentions he may raise to the contrary. Consequently, the Court should **DISMISS** Wrobel's claims for failure to exhaust.

The Court need not address the additional ground for dismissal contained in Respondent's Response.

### III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Wrobel leave to appeal *in forma pauperis*. Though Wrobel has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal

is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Wrobel's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** without prejudice Wrobel's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Wrobel leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Wrobel and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of November, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA